LITTLER MENDELSON, P.C.
Gavin Appleby, *pro hac vice*
Terri M. Solomon
Attorneys for Defendants
    Five Guys Enterprises, LLC
900 Third Avenue
New York, NY  10022.3298

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LUCIA MARETT, on behalf of herself and all others similarly situated,<br><br>                Plaintiff,<br><br>         -against-<br><br>FIVE GUYS ENTERPRISES, LLC,<br><br>                Defendant. | Case No. 1:17-CV-00788-KBF |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

**TABLE OF CONTENTS**

**Pages**

PRELIMINARY STATEMENT..................................................................................................1

LEGAL ARGUMENT..................................................................................................................2

      I.      Marrett Mistakenly Contends The *Pallozzi* and *Scribd* Decisions Mandate A Finding That Five Guys' Website Is a Public Place of Accommodation................2

      II.     Congress Has Not Amended The Statute................................................................5

      III.    The Department of Justice's Statements Are Not Entitled To Deference..................................................................................................................6

      IV.    Plaintiff's Claims Are Moot......................................................................................8

CONCLUSION............................................................................................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Bitetto v. D'Angelo*,
 2016 U.S. Dist. LEXIS 177482 (N.D.N.Y. Dec. 20, 2016) ...................................................... 4

*Brenchley v. Vill. of Phoenix*,
 No. 5:01 CV 0190, 2005 WL 2437027 (N.D.N.Y. Sept. 30, 2005) ......................................... 9

*Catskill Mts. Chptr. of Trout Unlimited, Inc. v. United States EPA*,
 846 F.3d 492 (2d Cir. 2017) ............................................................................................ 6, 7, 8

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*,
 467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984) ..................................................... 6, 7

*Christensen v. Harris County*,
 529 U.S. 576, 120 S. Ct. 1655, 146 L. Ed. 2d 621 (2000) ....................................................... 7

*In re Dow Corning Corp.*,
 27 F.3d 280 (2d Cir. 2001) ....................................................................................................... 5

*Doyle v. Midland Credit Mgmt., Inc.*,
 722 F.3d 78 (2d Cir. 2013) ..................................................................................................... 10

*Fed. Exp. Corp. v. Holowecki*,
 552 U.S. 389, 128 S. Ct. 1147, 170 L. Ed. 2d 10 (2008) ......................................................... 7

*Foley v. JetBlue Airways, Corp.*,
 2011 U.S. Dist. LEXIS 85426 (N.D. Cal. Aug. 3, 2011) ......................................................... 6

*Gomez v. Five Guys*,
 No. 16-cv-25315 (S.D. Fla. 2017) ...................................................................................... 1, 9

*Grove v. De La Cruz*,
 407 F. Supp. 2d 1126 (C.D. Cal. 2005) ................................................................................... 9

*Hernandez v. Berlin Newington Assocs., LLC*,
 No. 3:10CV1333 DJS, 2015 WL 418128 (D. Conn. Jan. 30, 2015) ........................................ 9

*Nat'l All. for Accessibility, Inc. v. Walgreen Co.*,
 No. 3:10-CV-780-J-32-TEM, 2011 WL 5975809 (M.D. Fla. Nov. 28, 2011) ......................... 9

*Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*
 545 U.S. 967, 125 S. Ct. 2688. 162 L. Ed. 2d 820 (2005) ....................................................... 7

*Nat'l Fed'n of the Blind v. Scribd Inc.*,
   97 F. Supp. 3d 565 (D. Vt. 2015) .................................................................................. 2, 4, 5

*Norkunas v. Tar Heel Capital Wendy's LLC*,
   No. 5:09-CV-00116, 2011 WL 2940722 (W.D.N.C. July 19, 2011) ....................................... 9

*Pallozzi v. Allstate Life Ins. Co.*,
   198 F.3d 28 (2d Cir. 1999) ............................................................................................ 2, 3, 4

Rehabilitation Act of 1973,
   29 U.S.C. § 701 *et seq.* ......................................................................................................... 5

*Sharp v. Rosa Mexicano, D.C., LLC*,
   496 F. Supp. 2d 93 (D.D.C. 2007) ........................................................................................ 9

*Skidmore v. Swift & Co.*,
   323 U.S. 134, 65 S. Ct. 161, 89 L. Ed. 124 (1944) ............................................................ 7, 8

*United States v. Articles of Drug consisting of 203 Paper Bags*,
   818 F.2d 569, 571 (7th Cir. 1987) ........................................................................................ 5

*United States v. Mead Corp.*,
   533 U.S. 218, 121 S. Ct. 2164, 150 L. Ed. 2d 292 (2001) ................................................... 7

**Statutes**

29 U.S.C. § 794(d) ..................................................................................................................... 6

42 U.S.C. 8 12181 *et seq.* ......................................................................... 1, 5, 6, 7, 8, 9, 10

42 U.S.C. § 2000a-3 ................................................................................................................. 10

42 U.S.C. § 12188(a) ............................................................................................................... 10

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(1) ......................................................................... 2, 8, 10

Federal Rule of Civil Procedure 12(b)(6) ......................................................................... 1, 2, 10

**PRELIMINARY STATEMENT**

Defendant, Five Guys Enterprises, LLC ("Five Guys"), respectfully submits its Reply in Further Support of Defendant's Motion to Dismiss Plaintiff's Complaint (Dkt. 14). As shown below, Plaintiff's Opposition to Defendant's Motion to Dismiss (Dkt. 27) fails to cite relevant case law, and continues to assert conclusory statements in an attempt to state claims upon which relief could be granted against Five Guys. As such, Defendant's Complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

In addition, Plaintiff's equitable claims based upon website inaccessibility are moot and must thereby be dismissed for lack of subject matter jurisdiction. Notably, Five Guys is currently in the process of completing a large-scale website renovation effort – an effort undertaken prior to Plaintiff filing this suit – because Five Guys recently settled a similar website accessibility suit in the Southern District of Florida. *See Gomez v. Five Guys Enterprises, LLC*, Southern District of Florida Case No. 16-cv-25315. That settlement, enforceable as a contract, includes a requirement that the website be made accessible under the same standards sought by Plaintiff.

Curiously, Plaintiff's Opposition largely ignores this fact and disingenuously refers to Five Guys' website renovation as "*supposed* remediation efforts." *See* ECF No. 27, Pl.'s Opp. To Def.'s Mot. Dismiss ("Opp.") 27 (emphasis added). As a result of the remediation requirement in the prior settlement agreement, the website will ultimately comply with the non-mandatory guidelines that Plaintiff contends govern website accessibility as to blind and visually impaired individuals. Notably, the ADA does not provide for individual damages—instead the law is enforced by injunction. However, an enforceable settlement agreement provides the same outcome as an injunction, i.e. remediation consistent with applicable standards.

1

Therefore, as fully set forth herein, Defendant respectfully requests that this Court dismiss all of Plaintiff's claims against it with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6) and/or Federal Rule of Civil Procedure 12(b)(1).

## LEGAL ARGUMENT

**I.     Marrett Mistakenly Contends The *Pallozzi* And *Scribd* Decisions Mandate A Finding That Five Guys' Website Is A Public Place Of Accommodation**

Plaintiff, in her Opposition, makes two arguments in support of the claim that Defendant's website violates Title III of the Americans with Disabilities Act ("the ADA"). First, plaintiff claims that the website is a "service" of Defendant's restaurant (which is a public accommodation) and Plaintiff, because of her disability, is unable to fully and equally enjoy this service due to the "accessibility barriers" in violation of § 12182(a) of the ADA. *See* ECF No. 27, Opp. 5. Plaintiff attempts to circumvent a finding on whether the website is a "public accommodation" by labeling it a service of a public accommodation. This attempt fails.

Plaintiff brings the disability claim under § 12182(a) of the ADA. This provision states that "no individual shall be discriminated against on the basis of disability in the full enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, (or leases to) or operates a place of public accommodation." 42 U.S.C. § 12182(a) (emphasis added). It is self-evident that to establish a claim under this provision, a plaintiff must establish that the discrimination she alleges stems from a place of public accommodation. Plaintiff claims here that she is being denied access on the basis of her disability to enjoy fully the goods and services of the website, due to accessibility barriers. Accordingly, she must demonstrate that the website, not a restaurant, is a place of public accommodation.

As an initial matter, the website itself cannot be considered merely a service and Plaintiff proffers no support for this contention. The website is a domain that lists the goods and services offered to its customers. The website offers one method, of several methods – e.g., telephone, facsimile, in person transaction -- a consumer may use to access the goods and services Five Guys offers. In other words, Plaintiff's claim is based on the allegation that she was denied one of many methods of accessing defendant's goods and services. This is not a case where Plaintiff alleges that Defendant flatly refused to offer its goods and services to her because of her disability. Plaintiff's difficulty to access the website to purchase a cheeseburger does not preclude her from fully enjoying Defendant's goods and services. There are several other modes of access from which to choose.

The second argument Plaintiff makes is that the website is covered under Title III by extension because Defendant operates establishments that are places of public accommodation. *See* ECF No. 27, Opp. 5. Plaintiff's extension argument fails because its overreaches. As websites are not mentioned in the statute and Congress has had ample opportunities to amend the statute to include websites and has chosen not do so with respect to private entities, Plaintiff's extension argument must fail.

Third, Plaintiff erroneously argues *Pallozzi v. Allstate Life Ins. Co.*, 198 F.3d 28 (2d Cir. 1999) is proof that Defendant's "claims that 'the Second Circuit has not directly addressed the question'" on whether a website is a place of public accommodation is "patently false." *See* ECF No. 27, Opp. 5. Contrary to Plaintiff's assertion, *Pallozzi* "is [not] controlling here and [does not] confirm(s) that Title III applies to an entity such as Defendant that provides the services of its public accommodation via the Internet." *Id.* at 5. In *Pallozzi*, the defendant Allstate refused to sell a joint life insurance policy to a couple because of their mental disabilities. Allstate argued

3

that while Title III specifies an "insurance office" is a place of public accommodation it does not reach the underwriting practices of insurance companies. The Second Circuit disagreed. Contrary to Plaintiff's assertion, *Pallozzi* is distinguishable from the instant case and is not controlling precedent. Putting aside the fact that *Pallozzi* nowhere discusses the Internet or websites, or even verbal or written correspondence, *Pallozzi* addressed *only* the underwriting practices of insurers operating insurance offices, holding that "an entity covered by Title III is not only obligated by the statute to provide disabled persons with physical access, but is also prohibited from refusing to sell them its merchandise by reason of discrimination against their disability." *Pallozzi*, 198 F.3d at 33.

Plaintiff does not contend that she was denied physical access to any of the Five Guys restaurants, nor does she contend Five Guys refused to sell her a gift card or serve her meals. Plaintiff's only allegation is that there are "barriers" to her accessing a website which is merely an alternate method for obtaining certain goods or services available at all physical Five Guys locations. *Pallozzi* would only be determinative of Plaintiff's claims if the issue there had been whether the Pallozzis had been unable to purchase the insurance policy because their disability prohibited them from entering an office or availing themselves of any telephonic or written means of purchasing a policy. Thus, the Court should disregard the asserted equivalency drawn by Plaintiff and recognize, as did the Northern District of New York in *Bitetto v. D'Angelo*, 2016 U.S. Dist. LEXIS 177482, *4 (N.D.N.Y. Dec. 20, 2016), that the question as to whether a website is covered by Title III is a matter as yet undecided in this Circuit.

Plaintiff's reliance on *Nat'l Fed'n of the Blind v. Scribd Inc.*, 97 F. Supp. 3d 565 (D. Vt. 2015), is equally misplaced. In *Scribd* the Vermont district court found that an entirely internet-based business, without a physical location, was a place of public accommodation and was

4

covered under Title III. The court in *Scribd* found the text of the ADA ambiguous and used legislative history to resolve the ambiguity in favor of finding the web based business to operate a place of public accommodation.

The facts in *Scribd* are particularly striking and appear to be the impetus driving the decision. Although Defendant flatly disagrees with the *Scribd* court's broad determination that a website may be a place of public accommodation, it is worth noting that in so finding Judge William K. Session's conclusion seems motivated in large part because Scribd is a purely web-based company without any alternate physical location through which the public could access its services. Scribd is a digital library that operates reading subscription services on its websites and on apps for mobile telephone and tablets. Scribd's digital software is accessed over the Internet. Scribd does not have any physical locations open to the public. All of Scribd's services are inaccessible to visually impaired persons. This is not the case here. Unlike the plaintiffs in *Scribd*, a visually impaired consumer is not denied total access to Defendant's goods and services. A visually impaired consumer may access Defendant's services through other means.

In any event, the decision in *Scribd* is not binding on this Court. *See In re Dow Corning Corp.*, 27 F.3d 280, 287 (2d Cir. 2001); *United States v. Articles of Drug consisting of 203 Paper Bags*, 818 F.2d 569, 571 (7th Cir. 1987) (Posner, J.) (district court decisions do not even "bind[] … other district court judge in the same district.").

## II.     Congress Has Not Amended The Statute

While Defendant agrees it would be unreasonable to expect Congress, when it enacted the ADA in 1990, to have had the foresight to know the coming prevalence and import of the Internet and include explicit references thereto in the statute, such logic does not hold true in 1998 or, even more so, in 2008. Indeed, in 1998, Congress amended the Rehabilitation Act of

1973, 29 U.S.C. § 701 *et seq.*, specifically to require federal agencies to make electronic and information technology (EIT) accessible to people with disabilities, but chose not to extend this requirement to private entities. *See* 29 U.S.C. § 794(d). Similarly, in 2008 Congress amended the ADA but did not expand the list of places of public accommodations to include websites or mandated EIT access for people with disabilities.

### III.    The Department of Justice's Statements Are Not Entitled To Deference

Plaintiff argues that, as the Department of Justice ("DOJ") has taken the position in various settlements, blogs, and statements of interest that websites are public accommodations which must be WCAG-compliant, the DOJ has expressed a clear interpretation of Title III that must be afforded deference by this Court. However, such statements are "not the type of formal agency interpretation entitled to *Chevron* deference." *Foley v. JetBlue Airways, Corp.*, 2011 U.S. Dist. LEXIS 85426, at *29 (N.D. Cal. Aug. 3, 2011).

The Second Circuit "evaluate[s] challenges to an agency's interpretation of a statute that it administers within the two-step Chevron deference framework." *Catskill Mts. Chptr. of Trout Unlimited, Inc. v. United States EPA*, 846 F.3d 492, 507 (2d Cir. 2017). The first step asks "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984). If the statutory language is "silent or ambiguous," however, the Court proceeds to the second step, where "the question for the court is whether the agency's answer is based on a permissible construction of the statute" at issue. *Id.* at 843. If it is not "arbitrary, capricious, or manifestly contrary to the statute," the court shall "accord deference to the agency's interpretation of the

6

statute so long as it is supported by a reasoned explanation, and 'so long as the construction is a reasonable policy choice for the agency to make.'" *Catskill Mts. Chptr. Of Trout Unlimited, Inc.*, 846 F.3d at 507, quoting *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 986, 125 S. Ct. 2688, 162 L. Ed. 2d 820 (2005).

While courts have held that in some circumstances, it may be appropriate to afford an agency *Chevron* deference despite the agency's lack of formal notice and comment rulemaking on the issue, such formal processes are the preferred method through which to apply the *Chevron* deference. *United States v. Mead Corp.*, 533 U.S. 218, 229-31, 121 S. Ct. 2164, 150 L. Ed. 2d 292 (2001). In fact, the Supreme Court has regularly refused to do so provide deference in similar circumstances. *See*, *e.g.*, *Fed. Exp. Corp. v. Holowecki*, 552 U.S. 389, 399, 128 S. Ct. 1147, 170 L. Ed. 2d 10 (2008) (denying "full Chevron deference" to the Equal Employment Opportunity Commission's policy statements contained in its compliance manual and internal directives); *Christensen v. Harris County*, 529 U.S. 576, 587, 120 S. Ct. 1655, 146 L. Ed. 2d 621 (2000) (declining to defer to an agency interpretation contained in an opinion letter).

Plaintiff argues that at the very least this Court owes deference to the DOJ's various informal interpretations of the ADA under the more lenient standard set forth in *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S. Ct. 161, 89 L. Ed. 124 (1944), which instructs that the "rulings, interpretations and opinions" of an agency may constitute "a body of experience and informed judgment to which courts and litigants may properly resort for guidance." The actual level of deference to be accorded an agency interpretation, however, is dependent on the interpretation's "power to persuade" based on "the thoroughness evident in its consideration, the validity of its reasoning, [and] its consistency with earlier and later pronouncements." *Id.* Most notably, however, *Skidmore* only applies where the statutory language at issue is ambiguous.

*Catskill Mts. Chptr. Of Trout Unlimited, Inc.*, 846 F.3d at 509. As Defendant has already argued, the ADA is unambiguous in its exclusion of websites from public accommodations.

Notably, Plaintiff asserts that *Skidmore* necessitates deference to amicus briefs and statements of interest issued by the DOJ simply because they are issued by the DOJ, without any analysis of the contents contained therein. While the DOJ has certainly taken the position in various cases that Title III of the ADA extends to websites operated by places of public accommodation, that position in and of itself is not evidence of thorough consideration, valid reasoning, and consistency with other pronouncements. To the contrary, the fact that seven years have passed since the DOJ issued its Advance Notice of Proposed Rulemaking on web accessibility without issuing any actual regulations is clear evidence that even the DOJ is unclear as to what, if any, standard is to be applied to privately operated websites. For the DOJ to take a position requiring entities operating websites to comply with as yet unpublished standards is not a position which should be afforded deference by this Court. To ask a company to spend significant dollars to modify its website to be WCAG compliant in the absence of an explicit statutory requirement or regulatory guidance is an unreasonable burden. Accordingly, the Court should dismiss Plaintiff's request and the Complaint in its entirety.

## IV. Plaintiff's Claims Are Moot

Lastly, even if Plaintiff's Complaint does state a claim upon which relief can be granted, which Five Guys maintains it does not, this action should still be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1). Indeed, Plaintiff's claims are moot because Five Guys is currently engaged in the process of completing a large-scale website renovation effort – an effort undertaken *prior* to Marrett filing this suit. Five Guys is currently engaged in such a remediation process because Five Guys recently settled a similar website accessibility suit in the Southern

District of Florida. *See Gomez v. Five Guys Enterprises, LLC*, Southern District of Florida Case No. 16-cv-25315.

Notably, federal courts have dismissed Title III claims as moot when the alleged violations have been remedied or are being remedied after the initial filing of a suit seeking injunctive relief.[1] In dismissing cases, courts generally find that "alleged discrimination cannot reasonably be expected to recur" when structural modifications have been made because such "modifications are unlikely to be altered in the future." *Sharp v. Rosa Mexicano, D.C., LLC*, 496 F. Supp. 2d 93, 99 (D.D.C. 2007).

Here, Five Guys has already expended and will expend significant time and resources to complete its website remediation process. To successfully effectuate this renovation, the Company has utilized the services of a reputable third party company skilled in creating accessible websites that comply with WCAG. These thorough efforts have been both time-consuming and expensive, but they will result in a website that will meet WCAG's model guidelines.

Importantly, the settlement agreement entered into by Five Guys is enforceable by law, and thus Five Guys has agreed to compulsory remediation, which is *exactly* what Plaintiff is demanding. Given that there is no basis for individual damages under Title III of the ADA, the settlement remediation above is already doing exactly what Plaintiff in this case is demanding Five Guys must do.

---

[1] *See, e.g.*, *Nat'l All. for Accessibility, Inc. v. Walgreen Co.*, No. 3:10-CV-780-J-32-TEM, 2011 WL 5975809, at *3 (M.D. Fla. Nov. 28, 2011); *Norkunas v. Tar Heel Capital Wendy's LLC*, No. 5:09-CV-00116, 2011 WL 2940722, at *4 (W.D.N.C. July 19, 2011); *Grove v. De La Cruz*, 407 F. Supp. 2d 1126, 1130 (C.D. Cal. 2005); *Brenchley v. Vill. of Phoenix*, No. 5:01 CV 0190, 2005 WL 2437027, at *4 (N.D.N.Y. Sept. 30, 2005) ("It is undisputed that any apparent violation of the ADA by the Village has been definitively remedied to the satisfaction of the Department of Justice. Consequently, plaintiff's request for declaratory relief, to the extent he is deemed to have raised one, must be dismissed."); *see also Hernandez v. Berlin Newington Assocs., LLC*, No. 3:10CV1333 DJS, 2015 WL 418128, at *2 (D. Conn. Jan. 30, 2015) (explaining that "a defendant's voluntary removal of alleged

In Plaintiff's Opposition, she asserts that her claims are not mooted because "Marett and other visually impaired individuals have been injured and continued to be discriminated against despite Defendant Five Guys *supposed remediation efforts*." *See* ECF No. 27, Opp. 27 (emphasis added). Plaintiff then insinuates that there is no reasonable expectation that the wrong she allegedly suffered will not be repeated in the future. *Id.* at 27-28.

However, Five Guys began evaluating and upgrading its website before Marett initially filed the instant suit. Thus, the website was renovated out of Five Guys' desire to go beyond what current laws and regulations require and make its website more accessible to all individuals – not as an attempt to avoid or in response to Marett's lawsuit. This in mind, the alleged discrimination cannot reasonably be expected to recur and, consequently, Marett's claims under Title III (which provides for injunctive relief only) and related New York state and municipal law (to the extent she seeks injunctive relief under those statutes) are now moot. *See* 42 U.S.C. § 12188(a); 42 U.S.C. § 2000a-3.  Therefore, this Court lacks subject matter jurisdiction over Marett's claims for injunctive relief, which must be dismissed. *See Doyle v. Midland Credit Mgmt., Inc.*, 722 F.3d 78, 80 (2d Cir. 2013) ("[W]hen a case becomes moot, the federal courts lack subject matter jurisdiction over the action.") (internal citations and quotations omitted).

## CONCLUSION

Five Guys respectfully requests that this Court dismiss all of Plaintiff's claims against it with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6) and/or Federal Rule of Civil Procedure 12(b)(1).

---

barriers prior to trial can have the effect of mooting a plaintiff's ADA claim") (internal citations and quotations omitted).

| | |
|---|---|
| Dated:  May 26, 2017<br>New York, New York | **LITTLER MENDELSON, P.C.**<br><br>/s/ Gavin Appleby<br>Gavin Appleby, *pro hac vice*<br>gappleby@littler.com<br>3344 Peachtree Road, N.E.<br>Suite 1500<br>Atlanta, GA 30326-4803<br>Tel: (404) 760-3935<br>Fax: (404) 759-2372<br><br>Terri M. Solomon<br>tsolomon@littler.com<br>900 Third Avenue<br>New York, New York 10022-3298<br>Tel: (212) 583-2662<br>Fax: 646- 219-5971<br><br>Attorneys for *Five Guys Enterprises, LLC* |

**CERTIFICATE OF SERVICE**

I, Gavin Appleby, hereby certify that on May 26, 2017, a true and correct copy of the foregoing Reply Memorandum of Law in Further Support of Defendant's Motion to Dismiss Plaintiff's Complaint was served on all counsel of record via the Court's ECF system.

/s/ Gavin Appleby
Gavin Appleby, *pro hac vice*